PARIS TRANSIT CO. v. FATH. (No. 8220.)

(Court of Civil Appeals of Texas. Dallas. Oct. 25, 1919. On Rehearing, Nov. 29, 1919.)

1. STREET RAILROADS ⊂⊃118(5)—KNOWLEDGE OF PERIL OF DRIVER OF UNMANAGEABLE HORSE.

In an action for injuries to the driver of a buggy struck by a street car when the horse became unmanageable, a charge requiring the jury to find that the motorman "actually discovered" the driver's peril before the latter would be entitled to a verdict was not erroneous as failing to require the jury to find that the motorman "realized" and "appreciated" the peril.

2. STREET RAILROADS ⊂⊃118(5) — CARE REQUIRED BY MOTORMAN OBSERVING DRIVER OF FRIGHTENED HORSE.

An instruction that if the jury believed that plaintiff was on the street car tracks in a position of peril due to the balking or fright of his horse, and the motorman actually discovered him in that position in time to have stopped the car before the collision but failed to do so, then to find for plaintiff, was not erroneous as imposing a greater duty than the law required.

Appeal from District Court, Dallas County; W. F. Whitehurst, Judge.

Action by C. H. Fath against the Paris Transit Company. Verdict and judgment for plaintiff, and defendant appeals. Affirmed.

Templeton, Beall, Williams & Callaway, of Dallas, for appellant.

John White and M. M. Parks, both of Dallas, for appellee.

---

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

RASBURY, J. This is an appeal from verdict and judgment awarding appellee $575 damages for personal injuries due to the alleged negligence of appellant in injuring appellee after it discovered him upon its street railway tracks in a position of peril.

The facts proven by appellee at trial disclose that he was driving a horse attached to a buggy east on Washington avenue in Paris, Tex. When he reached and was upon the tracks of appellant on Main street, where they cross Washington avenue, for some unknown reason the horse became frightened, commenced prancing and "dancing," and refused to go forward. When the horse became unmanageable, it was in full view of and observed by the motorman who was operating a street car of appellant about 225 feet distant and north of the street intersection and approaching appellee and his horse. The motorman made no attempt to stop his car, though he could have done so, and as a consequence struck the buggy while practically across the tracks, threw plaintiff therefrom, and injured him. After striking the buggy, the car traveled a distance of about 200 feet before it was stopped.

The facts proven by appellant disclose that its motorman saw appellee and his horse and buggy upon the tracks when 100 feet or more distant, at which time the street car was going about 12 miles an hour. The motorman made no effort to stop his car when he first saw appellee. When within 40 or 50 feet of appellee, at which time the buggy had cleared the tracks by 2 or 3 feet, but while the horse was continuing to "cut up," the motorman wound up the slack in his brake, in order to be prepared to stop his car if the horse got upon the tracks, and continued on his way; but when the front of the car had passed the buggy about 6 feet the horse backed it into the car, which was stopped in less than the car length.

[1] The court in presenting the case to the jury eliminated all issues save that of discovered peril. On that issue he charged the jury, in substance, that if they believed that due to the balking, fright, or ungovernable disposition of the horse driven by appellee, it placed him upon appellant's tracks in a position of peril from the approaching car, and that appellant's motorman actually discovered appellee's peril in time to have stopped the car and avoided the accident, by using all the means at his command, consistent with the safety of the car and its passengers, but that the motorman, after discovering appellee's peril, if he did discover it, failed to stop the car, and such failure proximately contributed to injure appellee, to find for him such damages as were authorized by subsequent portions of the charge.

The charge is assailed as erroneous on the ground that it did not require the jury to believe that the motorman "realized" and "appreciated" appellee's peril. The charge required the jury to find and believe that the motorman "actually discovered" appellee's peril before the latter would be entitled to verdict. That is all that is required by the rule. Any language that conveys the requirement is sufficient. M., K. & T. Ry. Co. of Texas v. Reynolds, 103 Tex. 31, 122 S. W. 531. To actually know a thing is to realize it, since a thing realized is a thing actually known. To "appreciate" a thing, in the sense contended for by appellant, is to perceive, detect, be fully aware or conscious of, which, in final analysis, is but to actually know. We conclude the charge was sufficient in the respect complained of.

[2] The charge is further assailed on the ground that it imposes a greater duty upon appellant than that required by law. The precise point is that the charge directs the jury, in the event they believe appellee was on the tracks in a position of peril, and that the motorman actually discovered him in that position in time to have stopped his car before injuring him, but failed to do so, then to find for appellee, while the correct rule is that the motorman was required only to exercise ordinary care to stop the car. That appellant was only required to use ordinary care to avoid injuring appellee if he discovered his peril in time to do so will, we assume, be conceded, since that is the legal standard of care to be exercised in all cases, save where special relations exist, but it is none the less a high degree of care in cases of imminent peril.

It has been held that a charge which is "addressed to the particular things that should have been done, rather than to the legal standard of duty, is unobjectionable because, practically viewed, it exacts no more than the doing of that which obviously was necessary under the facts of the particular situation to constitute the care required." San Antonio & A. P. Ry. Co. v. Hodges, 102 Tex. 524, 120 S. W. 848. The inquiry then, under the rule, is: Was it the duty of the appellant's motorman, in the light of the facts in the record, to stop his car, for it must be conceded that that is what the charge required him to do? We have recited the facts proven by both sides. Under those adduced by appellee it was the duty of the motorman to stop the car. It was his duty because he was conscious of appellee's peril and could have stopped the car. Some facts adduced by appellant, however, were not in harmony with those adduced by appellee, and the question is: Did those differences make it any less the motorman's duty to stop the car? The first point of difference is the distance of the street car from appellee when the motorman discovered him, which the latter places at 100 feet. That difference is immaterial, for the reason that the motorman conceded at trial that he could not only have

stopped his car within that distance, but could have done so within less distance. The second point of difference in the facts is the situation of appellee. The latter says he was upon the tracks. The motorman testified that when his car was within 100 feet of appellee he saw the horse upon the track "cutting up," but that when he got within about 50 feet of appellee and the horse and buggy they had cleared the track by 2 or 3 feet. At this time he wound up the slack in his brake in order that he might stop his car if the horse got back upon the track, and continued his course; but, when the front of the car had passed the horse and buggy about 6 feet, the horse backed into the car. Were the acts of the motorman such as a jury would have been authorized to find constituted ordinary care, which in the instant case was a high degree of diligence to avert injury? We believe not. It is said that knowledge of the danger of injury, and not the certainty of it, is what requires the use of all means to avoid it, and that operatives cannot speculate on the probability or not of injuring one in a perilous position. Gehring v. Galveston Electric Ry. Co., 134 S. W. 288. That the motorman was conscious of the danger with which appellee was threatened is hardly to be denied. He admits that he wound his brake when within about 50 feet of the horse and buggy so as to be prepared in case the horse got upon the tracks, which is obviously an admission that he realized the danger of such an occurrence; in short, that the danger was a continuing one. That being true, we are constrained to hold that it was the motorman's duty to stop the car from the time he observed appellee upon the track. That he could have done so is not denied.

The third assignment raises questions disposed of by our ruling upon the first assignment, and the issue presented by the fourth assignment is disposed of by our holding that it was appellant's duty under the facts in the case to stop the car.

The judgment is affirmed.

### On Rehearing.

We have carefully examined and considered appellant's motion for rehearing, and, being of opinion that our original conclusion is correct, the motion is overruled. In our opinion we made the following statement:

"When within 40 or 50 feet of appellee, at which time the buggy had cleared the tracks by 2 or 3 feet, but while the horse was continuing to 'cut up,' the motorman wound up the slack in his brake chain in order to be prepared to stop his car if the horse got upon the tracks, and continued on his way."

Counsel assert that the statement is wholly without support in the evidence. We notice this claim for the reason that it is not only our duty to state the facts as the record dis-

closes them, but it is of much importance to litigants who desire to review our decision, and for that reason we have again examined the evidence, and we find that appellant's motorman testified:

"I guess I was 100 feet or further than that from the (cross) street when they drove on the track. * * * I did not put on my brake, but I taken the slack out of my brake chain when I got in about, well, 50, 40 or 50, feet * * * of appellee. I took the slack up because the horse was cutting up, to be safe if he got upon the track, so I could stop the car."

The foregoing evidence is taken from appellant's brief, and it will be observed that the statement made in our original opinion is precisely supported thereby.