St. Louis Southwestern Railway Company v.
Mrs. L. B. Jacobson.

Decided February 15, 1902.

**1.—Railway Company—Operating Trains—Duty of Lookout—Ordinary Care.**

As to persons rightfully on a railroad track the operatives of a train owe the general duty of a lookout, and must exercise ordinary care to discover them, as well as to also avoid injuring them after the peril is discovered.

**2.—Same—Charge.**

An instruction requiring the operatives in charge of a train, and who saw a servant rightfully on the track ahead, to use ordinary care to avoid striking him, can not be construed as requiring them to use ordinary care to stop the train from the time the servant was first seen on the track.

**3.—Same—Contributory Negligence—Discovered Peril—Charge.**

The law of discovered peril, or the duty arising therefrom, when the peril is due to the negligence of the party injured, is in a sense a part of the law of contributory negligence,—a modification of the rule forbidding recovery by reason thereof,—and may properly be embraced in a charge on that subject.

**4.—Same—Discovered Peril—Application of Rule.**

The doctrine of liability upon the discovered peril of one in fault is based upon the grounds of public policy which forbids the killing or maiming of another, even with his acquiescence, and this high duty to avoid such consequences devolves on the operatives of the train, whatever the fault of the person in peril, and although his negligence continues up to the moment of the injury.

**5.—Same—Charge—Fright—Ordinary Care—Pleading.**

A charge authorizing a recovery for causing the death of one rightfully on the track and in the use of proper care, if the operatives in charge of the train negligently permitted it to run upon him suddenly, and he was thereby put in a

position of peril, and was frightened so that he could not act with caution or judgment, and by reason of such terror failed to get out of the way of the approaching train, is not objectionable as authorizing a recovery even though the deceased might have saved himself by the exercise of ordinary care; and as to the necessity of pleading such matter, the defense of contributory negligence necessarily involves the point presented by such charge.

**6.—Deposition—Harmless Error.**

Error in the court's refusal, at a former term, to quash a deposition, is not available on appeal where it is not shown that the deposition was used upon the trial.

**7.—Judgment—Attorney Fee.**

Where the judgment was in favor of plaintiff, and awarded execution against defendant in their behalf for the entire recovery of damages, the defendant can not complain that it also adjudged to the attorneys of plaintiffs their contingent fee, and directed that it be paid to them out of the judgment.

Appeal from Smith.   Tried below before Hon. J. G. Russell.

*E. B. Perkins* and *Marsh, McIlwaine & Fitzgerald,* for appellant.

*Johnson & Edwards,* for appellee.

GILL, ASSOCIATE JUSTICE.—This suit was brought by Mrs. Jacobson, the appellee, for herself and as next friend of the minors, Maggie and Josie Jacobson, against the appellant to recover damages for the death of Joseph Jacobson, which was alleged to have been caused by the negligence of appellant.   Deceased was the husband of appellee and the father of the minors.

Appellant pleaded in defense general denial and contributory negligence.   A trial by jury resulted in a verdict and judgment for $3000 in favor of appellee and $1500 for each of the minors.   From this judgment the railway company has appealed.

Deceased, who bore to the appellee and the minors the relationship alleged, was a pumper in appellant's service, and it was his duty to keep the water tank at Trinidad on appellant's line, supplied with water for the use of its locomotives and to watch its trestles and bridges over Trinity River, Cedar Creek, and certain sloughs near the latter stream. To enable him to perform his duty of inspecting the bridges and trestles under his care he was furnished by the company with a railway velocipede.   This latter was a three-wheeled vehicle propelled by the hands and feet operating upon levers and pedals designed for the purpose. At the time of the accident the weather was clear and dry, and deceased was under written instructions from his master to go over the bridges and trestles after the passage of each train and to look out for fires, loose bolts, etc.

Deceased with his family lived at the Trinidad water tank.   The tank is between Trinity River on the west and Cedar Creek on the east, the latter being more than a mile east of the tank.   On the day of the accident deceased went on his velocipede to Malakoff, a station on appellant's line several miles east of the last bridge under his care in that

direction. The purpose of his visit to Malakoff was to purchase supplies for use at his home. While he was at Malakoff (which was a telegraph station) an extra freight train passed going west, the regular freight train being considerably behind time. This extra was flying signals which indicated that another was soon to follow, but there is no proof that deceased saw the signals. On the other hand, the evidence that he was in a store making purchases at the time this train passed and not in a position to see it, renders it improbable that he knew it was an extra or that another was soon to follow. A few minutes after the passing of this train he loaded two sacks of bran and some other smaller purchases on the velocipede and started in the direction of his home, following at no great distance the extra train. Not long after he left the regular freight train arrived at Malakoff going in the same direction, making a brief stop at that point. This train overtook deceased about two and a half miles from Malakoff, while he was going over one of the bridges which it was his duty to inspect after each train; collided with his velocipede, and so injured him that he died a few hours afterwards.

From a point where a train going west would come in sight of the first of the series of bridges in question, there is a heavy descending grade to within about 100 feet of the bridge on which the collision occurred. Thence west the grade is practically level. The train was running at a speed of about twenty miles an hour when it came in view of deceased, and according to the testimony of the engineer the deceased was actually seen entering on the bridge when the train reached that point, which is designated by the witnesses as the mouth of the cut. The engineer states that when he first saw deceased he thought he was a man with a sack on his back. Then almost instantly he thought it a cow in the bridge, whereupon he whistled for brakes, applied the emergency air brakes, and did all he could to stop the train, as he did not wish to incur the danger of running into a cow on the bridge. That he then saw it was a man on the bridge on a velocipede and continued his efforts to stop or check the speed to avoid injuring him, but was unable to do so. That he continued to sound the whistle from the time he saw deceased, but failed to attract his attention until the engine was within one telegraph pole of him, when deceased turned and looked back and signaled him to stop.

The fireman stated that he saw the deceased just after the engineer first sounded the whistle and at once saw it was a man on a velocipede. He corroborated the engineer as to the sounding of the whistle and effort to stop. In contradiction of this there was testimony to the effect that no whistle was sounded until the train reached the bridge on which deceased was, and some to the effect that the whistle was not sounded until after the collision. To contradict the evidence of an effort to stop the train there was testimony to the effect that the speed of the train was not checked until the collision occurred; that from the point where the engineer claims to have first seen deceased and begun

his efforts to stop the train to the point where the train was ultimately stopped was a distance of over 3000 feet; that from the point of view to the point of collision was 2040 feet; and there was testimony to the effect that, equipped as it was with ten cars having air brakes in good order and only seventeen cars in the train, the others having hand brakes, it could have been stopped before it reached the point of collision. It was shown that the bridge on which the accident occurred was less than six feet from the ground, and deceased could have descended therefrom without injury had he discovered the approach of the train in time.

The grounds relied on at the trial as a basis of recovery, were: (1) That Jacobson was rightfully on the track in the discharge of his duty, and that appellant's servants in charge of the train failed to use ordinary care to avoid injuring him; (2) that the operatives saw him and knew of his peril in time to avoid the injury, and thereafter failed to use the means at their command to stop the train or lessen its speed and thus prevent the collision.

These issues and the defense of contributory negligence were submitted to the jury, and the judgment is assailed mainly because of alleged errors in the court's charge and the refusal of requested charges. The following paragraph of the court's charge is assailed as erroneous:

"If you find from a preponderance of the evidence that the deceased, Joseph Jacobson, upon the occasion in question was upon a railroad velocipede upon the track of the defendant company, in the discharge of his duty as a bridge watcher of the defendant, for the purpose of inspecting the defendant's bridges, and if you further so find that the employes of the defendant in charge of its train saw him upon the track, then it became the duty of the said employes to exercise ordinary care, that is, that degree of care which an ordinarily careful and prudent person would exercise under the same or similar circumstances to make use of the appliances and equipments of the train at their command, to avoid running upon and striking said Jacobson with said train, and this duty arose and was continuous upon the part of said employes from the time said employes saw said Jacobson upon the track; and if the jury find from the preponderance of the evidence that the said employes failed to exercise such ordinary care, and that as a direct and proximate result of such failure to exercise such care that the said train ran upon and killed said Jacobson, then you should find for the plaintiffs."

It is contended under this assignment that it was error to impose the duty of care upon the train operatives until the peril of deceased was actually discovered. We understand the law to be that as to persons rightfully on the track where the operatives of a train may expect them to be, the operatives owe the general duty of lookout and must exercise ordinary care to discover them as well as to avoid injury after the peril is discovered. A violation of this duty would not render the company liable if the person thereby injured was guilty of contributory negligence in failing to exercise reasonable care for his own safety, but the

law imposes the duty nevertheless, and the company in such case is not acquitted of blame, but recovery is denied because the injured party is also in fault. To illustrate: Suppose deceased in the lawful discharge of his duty of inspection after the passage of each train, had been upon the bridge in question and had by some means become disabled so that he could not leave it. Suppose the operatives of the train could by the exercise of a reasonably careful lookout have discovered him in time to avoid injuring him. Can it be doubted that in such a case the company would be liable? Railway v. Watkins, 88 Texas, 24; Railway v. Simpkins, 54 Texas, 615; Railway v. Vaughn, 67 Texas, 479. Here, according to one phase of the testimony, the deceased was rightfully on the bridge and at a point where the operatives of the train had reason to expect him to be. It was the duty of the court to charge the law applicable to this state of facts if found by the jury to exist.

Under the portion of the charge complained of this duty was imposed and no more. If the engineer when he first saw deceased did not realize his peril, but proceeded upon the assumption that he would leave the point of danger, he discharged the measure of ordinary care if a person of ordinary prudence would have done no more considering the fact that deceased was on a bridge. The measure of care imposed might have been fulfilled by sounding the whistle or otherwise attracting his attention by some means at hand. In calling attention to the paricular respect in which the engineer should have exercised care the paragraph may be erroneous if considered alone, but taken in connection with special charges given at the request of appellant and in connection with the charge on contributory negligence we do not think it was misleading.

It will be noticed that the charge complained of does not require the engineer to use every means at hand consistent with the safety of the train to stop it or check its speed, but that the general duty to use ordinary care, owed to those rightfully on the track, was not relaxed by the mere fact that the engineer actually discovered deceased, but this duty continued unimpaired. The more imperative duty which arose in case the engineer discovered his peril in time to avoid the injury was defined in another part of the charge. It is contended, however, that the part of the charge complained of is obnoxious to the rule announced in Railway v. Garcia, 75 Texas, 583. The charge discussed in that case was with reference to the duty arising upon discovered peril. It was not held to be error in the abstract, but misleading by reason of the peculiar nature of the facts.

The contention that the court by the charge complained of required the engineer to use ordinary care to stop the train from the time he saw deceased is not a just criticism of the charge. As has been seen, the law imposed the duty to use ordinary care to avoid injuring deceased if he was rightfully on the track, and it seems to us the charge was within the law. Indeed it might be held with some show of reason that the undisputed facts show the evident peril of deceased from the time the

engineer admits having seen him, for it is undisputed that the man was in the act of going upon the bridge in plain view of a rapidly approaching train. Under such circumstances it may well be doubted if the engineer would be authorized to proceed upon the theory that deceased knew of the approach of the train and intended to get off in time. The bridge was of such length he could not hope to cross it in time to escape injury, and incumbered as he was he could not have cleared the track without throwing his vehicle and its burden to the ground and following it himself with haste. Such a course willingly followed would be so unreasonable and unusual, it may well be said that by going upon a bridge under circumstances which rendered it impossible for him to escape without pursuing such a course he made it perfectly plain that he was unconscious of the approach of the train.

The charge of the court on contributory negligence is assailed upon two grounds, (1) because it charges the law of discovered peril as a part of the law of contributory negligence; and (2) because in the event it should appear that the operatives of the train discovered the peril of deceased in time to have avoided the injury a recovery was permitted even though deceased saw the train in time to escape and negligently failed to do so. This latter point was also presented by special charges which were refused.

· Regarding the first objection we are of opinion the court did not err in the respect complained of. The law of discovered peril or the duty arising therefrom when the peril is due to the negligence of the party injured is in a sense a part of the law of contributory negligence; a modification of the rule forbidding a recovery by reason thereof. Under one phase of this case contributory negligence of deceased did not necessarily defeat a recovery, and the court in that connection properly called to the attention of the jury the law which under a certain state of facts would permit a recovery notwithstanding the fault of deceased.

Under the second objection appellant contends that while it is true, if the negligence of a person places him in a position of peril and the company's servants in charge of an approaching train discover his peril in time to avoid injury and fail to do so, the company is liable notwithstanding the fault of the person injured, yet this is true only in a modified sense. That is to say, when the negligence of the injured person is not continuous and existent at the time of the injury; and is not true if the person injured also discovers his peril in time to avoid it, but continues his negligent course after discovery of peril and does nothing to save himself.

The idea of appellant's counsel seems to be that if the recklessness of the person in peril, but able to save himself by the exercise of ordinary care, is equal to the recklessness of the train operatives, who might avert the injury by a resort to the means at hand, but do not, there can be no liability. The doctrine of liability upon the discovered peril of one in fault is based upon grounds of public policy which forbid the killing or maiming of another even with his consent or acquiescence, and this

high duty to avoid such consequences would devolve on the operatives of a train, whatever the fault of the person in peril. It seems to us the very reasons which underlie the doctrine constitute a complete answer to appellant's contention.

In such a case the question of negligence on the part of operatives is in a sense eliminated. The duty to resort to every means at hand, consistent with the safety of the train, to avoid the injury, is absolute, and the failure to do so partakes of the nature of a wanton wrong against which no act on the part of the person injured will be a defense. The rule has been adopted without qualification in this State. The courts have not sought to justify it on the questionable and technical ground that the defendant's failure to resort to every means at hand to prevent the disaster, is a new and intervening cause. It is based rather on the broad ground of public policy which forbids the interposition of such a defense by a wrongdoer who knowingly fails to prevent the destruction of human life when he can. McDonald v. Railway, 86 Texas, 1, and authorities cited; Railway v. Staggs, 90 Texas, 461; Railway v. Breadow, 90 Texas, 27.

The cases of Railway v. Rickets, 54 Southwestern Reporter, 1090, and Smith v. Railway, 25 Lawyers' Reports Annotated, 197, relied on by appellant, are not in point. In discussing and disapproving the doctrine of comparative negligence, it is said in the authorities cited that in every case where liability is predicated upon negligence the doctrine of contributory negligence is a complete defense. The rule announced is unquestionably sound, but in our opinion admits of the distinction which we have drawn.

The court charged the jury that if the employes of defendant negligently permitted the train to run upon deceased suddenly, and that deceased was rightfully on the track and in the exercise of proper care, and that by the negligence of defendant he was thereby put in a position of peril and was frightened and terrorized so that he could not act with caution or judgment, and that by reason of such terror he failed to get out of the way of the approaching train, plaintiffs would nevertheless be entitled to recover.

The charge is conceded to be abstractly correct, but is assailed as erroneous for the reason that it in effect instructs the jury that a recovery can be had notwithstanding the deceased might have saved himself by the exercise of ordinary care, and that such an issue was not made by the pleadings. That the first objection is not tenable is apparent. The second is alike untenable, because the issue of contributory negligence necessarily involves the point presented by the charge assailed.

By the first and second assignments of error appellant complains of the action of the court in overruling a motion to suppress the depositions of certain witnesses predicated upon the ground that the interrogatories were leading. This motion was presented and overruled at a term of the court preceding the one at which the cause was tried, and

exception was duly reserved by bill taken at the time. The record, however, does not disclose that the answers complained of were used upon trial. If they were in fact offered no objection was then urged, and we have no means of determining whether they were used upon the trial, and therefore can not say whether the rights of appellant were in any way prejudiced by the action of the court upon the motion. If they were not used it is plain the overruling of the motion, if error, would have been harmless.

Generally the mere fact that error was committed upon the trial will not serve to reverse a judgment on appeal. Whether it might have wrought harm to the party complaining is nearly always a question for the appellate court. We hold, therefore, that it was not enough merely to preserve by bill the action of the court in overruling the motion. The appellant must go further and show in some proper and definite way that the error was carried into the trial of the cause. This view is not only the logic and common sense of the question, but is sustained by authority. Telegraph Co. v. Hinkle, 22 S. W. Rep., 1004; Jackson v. State, 12 S. W. Rep., 701; Ivy v. Bondies, 44 S. W. Rep., 917.

Appellant also complains because the trial court adjudged to the attorneys representing appellee and the minors the amount of their contingent fee, and directed that it be paid to them out of the judgment. This, if error, in no way affects appellant. The judgment was in favor of plaintiffs and awarded execution against defendant in their behalf for the entire recovery. We are therefore of opinion the error, if any, is not one of which appellant can be heard to complain.

We think the evidence sufficient to support the verdict, and no reversible error being disclosed by the record, the judgment is affirmed.

*Affirmed.*

Writ of error refused.