## DAILY v. SUGARLAND INDUSTRIES et al.
### No. 10615.

Court of Civil Appeals of Texas. Galveston.
Sept. 29, 1938.

On Rehearing Jan. 12, 1939.

Vinson, Elkins, Weems & Francis, of Houston, and L. W. Pollard, of Rosenberg (C. M. Hightower, of Houston, of counsel), for appellant.

Baker, Botts, Andrews & Wharton and Gaius G. Gannon, all of Houston, for appellees.

CODY, Justice.

This is an automobile collision case. The collision occurred in Harris County on the Houston-Fort Bend County Highway on June 12, 1934, near the county line between an automobile, owned by appellant, which was being driven by his wife, who was unaccompanied, and a truck and trailer driven by Albert Ortega, who appellant alleged was then engaged in the course of his employment for appellees. The suit was instituted by appellant to re- cover damages from appellees for injury to his automobile, and for injuries sustained by his wife.

In view of the disposition made of this appeal it will be unnecessary to give a detailed statement of the pleadings, of the facts proved, or of the special issues submitted to the jury. Ortega, the truck driver, was acquitted on all issues of negligence, while appellant's wife was found guilty of negligence in that she was driving in excess of 45 miles an hour, and such negligence was found to be the proximate cause of the collision.

Appellant complains that the court erred in permitting appellees' (defendants' below) counsel, over objection, to make, relative to the issue on discovered peril, an argument which he urges was contrary to the law as laid down in such issue. The bill of exception, which fully discloses the argument complained of, is as follows:

"Be it remembered that upon the trial of the above entitled and numbered cause, and while Mr. Gaius Gannon, counsel for the defendants, was arguing the case to the jury, the following argument and proceeding occurred:

"Mr. Gannon: 'Now, here is an issue that I want to spend a little time on. It looks like I am about to keep you longer than I thought I would but I want to discuss this with you. This is a very important issue, a tricky issue. It is one, if you don't look at every word of it, you are liable to get fooled about what you are being asked; and I would hate for you to make a mistake in answering this issue. "Do you find from a preponderance of the evidence that the driver of the truck and trailer discovered and realized Mrs. Daily's position of peril in time, by the exercise of ordinary care in the use of the means at hand, consistent with the safety of his motor vehicle and its occupants, to have avoided the collision, and that after so discovering and realizing such position of peril he failed to exercise ordinary care to avoid the collision." To my way of seeing it, if you will analyze that question, it is mighty near asking you "did he deliberately and consciously cause the accident." '

"Mr. Hightower: 'If the Court please, I object to that. He is arguing in the teeth of the Court's charge. His statement is not supported by the Court's charge, and in fact is contrary to the Court's charge.'

"The Court: 'I overrule the objection. Go ahead.'

"Mr. Hightower: 'I except.'

"Mr. Gannon: 'Well, if it is not absolutely tantamount to deliberate an intentional injury it is the next thing to it.'

"Mr. Hightower: 'We want an objection to that argument; and ask that the jury be instructed not to consider it. It is in the teeth of the issue and contrary to the issue the Court has submitted.'

"The Court: 'I overrule the objection.'

"Mr. Hightower: 'We except'.

"Mr. Gannon: 'To my way of thinking, let me repeat, that is approaching deliberate and intentional misconduct. In other words, the court does not ask you did he drive fast and did that cause it; or did he fail to have his car under control and did that cause it; but, did he, after he discovered that the plaintiff was in a position of peril, and after he had not only discovered it, but realizing that the plaintiff was in a perilous position,—after that time,—do you see? Did he then fail to do something to avoid this collision.'

"Be it further remembered that said remarks and argument were not withdrawn from the jury, but were permitted to be considered by the jury."

██ If the argument was improper, prejudice to appellant will be presumed unless the contrary is made to appear by appellees. Bell v. Blackwell, Tex.Com. App., 283 S.W. 765. Appellees urge that the argument complained of was not improper, but that it could not prejudice appellant as it merely purported to give the personal opinion of their counsel as to the law involved in the issue.

██ Neither party complains here of the issue itself, which was submitted by the court, as not being proper. As is seen from the foregoing bill of exceptions, after telling the jury that the issue was tricky, and that they were liable to be fooled by it, counsel told them that to his way of seeing it, the question was mighty near to asking "did he deliberately and consciously cause the accident". The court, over appellant's objection that the argument was contrary to the charge, ruled that it was not, and then authorized appellees to continue such line of argument. Appellees thereupon repeated the argument which appellant had objected to, and appellant again objected and requested the court to instruct the jury to disregard it,

the court again overruled appellant, and appellees again repeated the argument. In this state of the record it can make no difference whether appellees' counsel stated dogmatically that his construction of the issue was the law, or more modestly stated that he believed it to be the law. The jury understood from the ruling by which the court rejected appellant's objection, and accepted appellees' construction, that they, the jury, must follow appellees' construction as the lawful one. Panhandle & S. F. Ry. Co. v. Harp, Tex.Civ. App., 199 S.W. 502; Western Indemnity Co. v. Corder, Tex.Civ.App., 249 S.W. 316; City of Dallas v. Firestone Tire & Rubber Co., Tex.Civ.App., 66 S.W.2d 729.

Is the construction of the issue which appellees' counsel made to the jury correct, is the issue tricky?

██ "The law of discovered peril, or the duty arising therefrom, when the peril is due to the negligence of the party injured, is in a sense a part of the law of contributory negligence,—a modification of the rule forbidding a recovery by reason thereof." St. Louis S. W. Ry. Co. v. Jacobson, 28 Tex.Civ.App. 150, 66 S.W. 1111, 1114, writ of error refused. And the law of discovered peril may be said to be made up of a combination of two rules. The first is that of the standard of care which is imposed by the common law, practically universally, to the effect that one is bound to exercise that degree of care on any particular occasion which a person of ordinary prudence would exercise under the same or similar circumstances. The second is the rule which gives everyone the right to assume that every one else will observe the law until he discovers and realizes otherwise.

Now the line of demarcation, between criminal responsibility for inflicting injuries and tort responsibility for inflicting injuries (though of course civil damages in punitive amount is recoverable for intentional injuries), is referable to whether the injuries were inflicted intentionally or not. For one intentionally to turn aside from a lawful course of conduct to knowingly inflict injuries on another who is helpless, is criminal conduct. This requires an affirmative, overt act; and the injuries resulting from such affirmative act could not be said to result from mere want of due care. On the other hand, it sometimes happens, and this is true of discovered peril cases, that it becomes one's duty

to take affirmative and positive action to avoid inflicting injuries. It is quite obvious to us, without going into the matter exhaustively, that the mere failure of a defendant to take such affirmative action, after discovering and realizing a plaintiff's peril, as is necessary to avoid injury to plaintiff, does not establish that such defendant intended to injure plaintiff merely because he failed to avoid the injury even though there was time enough for a person of ordinary prudence to have succeeded in avoiding inflicting such injury with the means at hand. It is entirely possible, for instance, that a defendant in a "discovered peril" case might not possess a nervous system of normal stability, and the sudden discovery of the perilous position of a plaintiff would unnerve him so that he could not act as a reasonably prudent person would have acted in the same circumstances. Another defendant, instead of being unstable nervously, might be wanting in normal judgment or prudence, and for that reason fail to come up to the standard of prudent action which is imposed by law, and thus injure the plaintiff contrary to his intentions. A constitutionally rash person might well adopt means to avoid injuring a person in a perilous position which he deemed adequate and yet fail, whereas a person of ordinary prudence would adopt other of the means at hand, and succeed. The dilemma proposed by appellees in their argument, namely, that where a plaintiff has been injured in a discovered peril case, the jury must find either that the defendant did not discover and realize plaintiff's peril in time to avoid the injury, or they must find that the defendant is guilty of intentionally causing the injury, or guilty of being so wanting in the sense of social duty, as to practically amount to the same thing, is not inherent in the issue as submitted by the court. The same character of dilemma, in slightly different form, is frequently urged on the courts by defendants in collision cases in claiming they were entitled to an instructed verdict. Either the plaintiff was not keeping a proper lookout—so the argument runs—or he would have seen defendant's vehicle in ample time to have avoided the collision.

■ If the issue as submitted by the court was correct, and no contention is made that it was not so, the construction placed on it in argument by counsel we believe wrong. The argument, in effect,

told the jury that the issue was tricky, that what it really meant was that unless they wanted to find that the truck driver, Ortega, deliberately intended to collide with Mrs. Daily, or was so reckless of consequences as to practically amount to the same thing, they must answer the issue in the negative. We have pointed out the fallacy in the reasoning by which counsel reaches the conclusion that the meaning of the issue was as contended for by him.

It is true that the opinion in St. Louis S. W. Ry. Co. v. Jacobson, supra, used the following language, quoted by appellees: "The duty to resort to every means at hand, consistent with the safety of the train, to avoid the injury, is absolute, and the failure to do so partakes of the nature of a wanton wrong, against which no act on the part of the person injured will be a defense. The rule has been adopted without qualification in this state. The courts have not sought to justify it on the questionable and technical ground that the defendant's failure to resort to every means at hand to prevent the disaster is a new and intervening cause. It is based rather on the broad ground of public policy, which forbids the interposition of such a defense by a wrongdoer who knowingly fails to prevent the destruction of a human life when he can."

But in that opinion the court was refuting the contention "that if the recklessness of the person in peril, but able to save himself by the exercise of ordinary care, is equal to the recklessness of the train operatives who might avert the injury by a resort to the means at hand, but do not, there can be no liability." The court further stated: "The doctrine of liability upon the discovered peril of one in fault is based upon grounds of public policy which forbid the killing or maiming of another, even with his consent or acquiescence, and this high duty to avoid such consequences would devolve on the operatives of a train, *whatever the fault of the person in peril.*" (Italics ours). The court did not have before it the question of the standard of care which the jury must apply to the conduct of the train operatives to determine whether they had rendered their company liable for the injuries which had been inflicted. The contention itself, which was being urged on the court, assumed that the conduct of the train operatives on the occasion in question was actuated by a total disregard of social duty. So it was appro-

priate for the court to refer to their failure to avoid injury to the deceased, sought to be justified on the ground urged, as partaking of the nature of wanton wrong. The court did not hold that there could be no liability on the part of a defendant in a case of discovered peril unless it first be made to appear that his conduct has been so very reckless as to partake of the nature of wanton wrong.

We have carefully considered the other authority by which appellees support the propriety of their construction of the meaning of the issue. Without reviewing such authority, what has already been said, when applied to it, shows that the cited authority is not in point.

Appellant has urged other grounds as cause for reversal. As we must reverse the case because of improper argument, and on another trial these matters may not arise, we refrain from ruling thereon.

Reversed and remanded.

PLEASANTS, C. J., absent.

On Motions for Rehearing.

CODY, Justice.

 The duty of a defendant to use *ordinary care* to avoid the infliction of injury on another in a position of imminent peril, after it is realized that the imperiled person cannot or will not save himself, is too well established in Texas jurisprudence to require citation of authority at this late date. It is self-evident that the duty to use *ordinary care* to avoid the infliction of injury is the duty to use a *higher degree of care* than is involved in merely refraining from intentionally inflicting injury, or the legal equivalent of it, on another person discovered to be in a position of imminent peril. Counsel will not be permitted to mislead a jury, however innocently on his part, into believing that, before a proper issue on discovered peril can be answered favorably to plaintiff, they must first believe or find that a defendant is so heartless and inhuman as to have intended to injure a helpless victim, or be guilty of practically the legal equivalent on one who was to him personally unknown. To permit a defendant's counsel in a "discovered peril" case to make such an argument would be, in practical effect, to abolish the doctrine of discovered peril which our Supreme Court has heretofore progressively and emphatically protected against the defense of contributory negligence, which has heretofore been the only basis of attack to the application of the doctrine of discovered peril.

It is true that our Supreme Court said, in Wilson v. Southern Traction Co., 111 Tex. 361, 234 S.W. 663, speaking through Justice Greenwood [page 665]: "* * * we do not see how conduct can be characterized otherwise than as exhibiting reckless indifference to destroying human life or causing human suffering *where it consists in failure to use ordinary care* to avoid the infliction of death or serious bodily injury on another in a position of imminent peril, after it is realized that the imperiled person cannot or will not save himself." (Italics ours).

 In other words, in a "discovered peril" case the law *deems* the failure of a defendant *to use ordinary care to avoid the infliction of injury*, as itself being reckless indifference to destruction of human life. As appears from our original opinion, the law of discovered peril originated as a modification of the rule of law which forbade a recovery where a plaintiff was shown to have been guilty of contributory negligence. Since it was perfectly obvious to the courts that there was no just reason to deny a plaintiff recovery from a defendant in a "discovered peril" case, the courts established the rule that *failure to use ordinary care* to avoid the infliction of injury did itself constitute such recklessness as to be the legal equivalent of an intentional wrong. As contributory negligence is never a defense to an intentional wrong, the courts, by *deeming the failure to use ordinary care* by the defendant in "discovered peril" cases to be the legal equivalent of intentional wrong, destroyed the foundation of any defense of contributory negligence in such cases. As bearing on the point under discussion we refer to the Wilson Case, supra, when it was in the Court of Civil Appeals, and to the dissenting opinion of Chief Justice Key delivered therein (187 S.W. at page 543 et seq., whose dissent was sustained by the Supreme Court). He had this to say [page 545]: "In my judgment, in order for the doctrine of discovered peril to apply and avoid the defense of contributory negligence, the conduct of the party sought to be held liable must be either willful or wanton, and whatever proof will show that the conduct referred to was neither willful nor wanton

will take the case out of the doctrine of discovered peril. *However, the Supreme Court of this state seems to have established the doctrine that when a person in charge of a * * * dangerous instrumentality, discovers that another person is in imminent peril of being seriously injured by his manner of operating it, and fails to exercise ordinary* care with the means then at hand to prevent the injury, he is *deemed in law* to have willfully or wantonly inflicted it," etc. (Italics ours).

So we see that, when a defendant in a proper "discovered peril" case fails to exercise ordinary care to prevent injury to a plaintiff, he is *deemed in law* to have wilfully or wantonly inflicted it.

Expressed otherwise, the inquiry submitted to the jury in such a case is as to the failure or not to use ordinary care. If the jury finds there was such a failure, then the law itself, for itself, determines that the injuries were of such a character that the plea of contributory negligence is not available to the defendant, that is, that the injuries were, in legal contemplation, intentionally inflicted. Certainly the converse is not true; the law does not require a finding by the jury that a defendant intentionally injured the plaintiff in a "discovered peril" case, as a condition precedent for finding that he failed to use ordinary care to prevent same.

We have taken far too much space to sustain what is manifest, that counsel cannot be allowed to argue in the teeth of the charge of the court, that such charge's real meaning is something directly contrary to its expressed meaning.

Appellee Sugarland Industries' motion for rehearing is refused.

■ However, it has been determined that the action of the learned trial court in dismissing the Sugar Company from the cause prior to its submission to the jury on a peremptory instruction in its favor was correct; the evidence conclusively showed that the appellant was neither an employee of the Sugar Company, nor did the latter sustain any other such relation toward him as made it in any way legally liable for any of the damages he declared upon; in fact, the main if not the sole authority upon which appellant relied for the visitation of liability upon the Sugar Company—Guinn v. Imperial Sugar Company, Tex.Civ.App., 44 S.W.2d 409—was based upon a state of facts dissimilar to those here obtaining; Guinn was an actual employee of the Sugar Company, which alone was a party to his suit, and the evidence there received further justified an inferential connection of legal identity between the Industries and the Sugar Company at that time; but the present record not only conclusively shows a complete change in those conditions, but further, as indicated, that appellant Daily was in no sense directly nor inferentially an employee of the Sugar Company.

The Sugar Company's motion for rehearing will, therefore, be granted, and this court's former judgment so reformed as to show an affirmance of the trial court's judgment in its favor.

Appellee Sugarland Industries' motion for rehearing refused.

Appellee Imperial Sugar Company's motion for rehearing granted.