### WICHITA FALLS & S. R. CO. v. HESSON.

### No. 2124.

Court of Civil Appeals of Texas. Eastland.

April 11, 1941.

On Rehearing May 9, 1941.

Further Rehearing Denied June 6, 1941.

Conner & Conner, of Eastland, and G. C. McDermett and Leslie Humphrey, both of Wichita Falls, for appellant.

Grisham & Grisham, of Eastland, for appellee.

LESLIE, Chief Justice.

This action was brought by C. M. Hesson against the Wichita Falls & Southern Railroad Company to recover damages for the death of his son, Harold Hesson, killed at a railroad crossing. The trial below was before the court and jury and upon the verdict returned, judgment was rendered for the plaintiff for the sum of $3,750. The defendant appeals.

This is a companion suit to that of Wichita Falls & S. R. Co. v. Anderson, Tex.Civ.App., 144 S.W.2d 441. The substantial difference is that appellee claims damages on the ground of discovered peril, etc., in addition to those asserted in the Anderson case. Other differences, if any, in the cases will be noted as the opinion proceeds.

Damages were claimed by plaintiff on the grounds that his son lost his life by reason of negligence of the Railroad Company in that it failed (1) to sound its engine whistle at least 80 rods from the crossing on the occasion of the accident, (2) that it failed "at a distance of at least 80 rods from said crossing to commence to ring its engine bell and to keep it ringing until it crossed the street intersection in question", (3) that the defendant "failed to clear timber and underbrush etc. from its right-of-way" to the left of the occupants of the automobile as they approached the crossing in question, (4) the defendant failed to maintain at the crossing an automatic signal light, (5) failed to maintain at the crossing an automatic bell, (7) failed to have a watchman at that point, and (8) that the defendant, its agents and operatives discovered the peril of the deceased Harold Hesson, etc.

The appellant entered a general denial and the following special defenses: (1) That Harold Hesson was driving his automobile in excess of 20 miles per hour within the corporate limits of the city of Ranger in violation of law; (2) that he was driving his car at an excessive and dangerous rate of speed without looking or listening to see if the crossing was clear of appellant's train, and without having his automobile under proper control; (3) that Harold Hesson failed to have proper lights on the front of his car; (4) that he failed

to look for warning objects along and down the highway in front of him as he approached the crossing, and (5) a general charge of negligence in the manner and way he approached the crossing. Such alleged acts and omissions were relied upon by the defendant as causing or contributing to cause the death of Harold Hesson.

At the conclusion of the trial appellant requested an instructed verdict and after return of the verdict, the defendant also moved for judgment notwithstanding the verdict. Each motion was overruled by the court and the first assignment is directed to the action of the court on the first one and assignments 2 to 8, inclusive, challenge the correctness of the court's action in refusing to grant the second.

There are other assignments complaining (a) that the court should have sustained various written objections to special issues submitted, and (b) that the jury's answers to various issues were against the great weight and preponderance of the evidence, etc.

The assignments and propositions addressed to the court's overruling said two motions will be first considered. Each requires a careful consideration of the testimony to determine the primary negligence, if any, of the defendant.

 In the Anderson case, supra, this court held that the failure of an operator of a Railroad Company to remove obstructions (timber and underbrush) to the view of the railroad by persons upon a highway approaching a crossing was not a ground of actionable negligence. The present record presents jury findings on this question in substance the same as those considered in that case. The authorities there cited are conclusive against appellee upon the propositions here presented. In so holding we again recognize the admissibility of such testimony under proper pleadings on other issues, such as failure to maintain watchman, automatic bell, etc.

 We now consider the appellant's attack on the jury finding that the defendant failed to maintain at the crossing (where the accident occurred) an automatic signal light, automatic bell or watchman; that each failure was negligence, a proximate cause, etc. The assignments and propositions raising these questions are based upon a record in substance the same as that considered in the Anderson case. Concerning the facts essential to support a recovery on either of these grounds the court said in that case:

"The facts necessary to support such legal conclusion would be such conditions, if any, surrounding the crossing as rendered it more than ordinarily dangerous; facts to show that the crossing was a place of extraordinary danger, meaning 'a place so peculiarly dangerous that prudent persons cannot use the same with safety.' Missouri, K. & T. Ry. Co. v. Long, Tex. Com.App., 299 S.W. 854, 855. Allegations of mere legal conclusions, absent the averment of any facts to support such legal conclusions, do not amount to an allegation of such facts [Citing many authorities.]

"There was no allegation, even as a legal conclusion, to the effect that the crossing was extraordinarily dangerous. Railroad crossings are inherently dangerous, and knowledge of a railroad crossing imputes a knowledge of danger. Gulf, C. & S. F. R. Co. v. Gaddis, Tex.Com.App., 208 S.W. 895; San Antonio & A. P. R. Co. v. Singletary, Tex.Civ.App., 251 S.W. 325; Wichita Valley R. Co. v. Fite, Tex.Civ. App., 78 S.W.2d 714; Compton v. Texas & N. O. R. Co., Tex.Civ.App., 96 S.W.2d 239. Manifestly not every mere difference in the degree of such danger can imply the legal duty of providing extraordinary means of warning consisting of the maintenance of an automatic bell, wigwag or a watchman. The rest test is that stated in the Long case, supra, namely, is the crossing a place so peculiarly dangerous that prudent persons cannot use the same with safety unless extraordinary care to avoid injuring such persons required such extraordinary means? By this test we think plaintiffs' pleadings were insufficient to support a judgment based upon a failure to maintain an automatic bell, a wigwag or a watchman."

Such conclusions are applicable to this case and extend as well to the additional issues involving "automatic signal light" raised in this case.

Further, we find no evidence that the crossing involved was extra hazardous or more than ordinarily dangerous. The evidence fails in this respect for the reason set forth in the Anderson case. The pictures of the crossing, the approach thereto, as well as the surrounding terrain taken with other undisputed testimony, including the facts that the crossing is in the middle of an open block, and that the deceased was familiar therewith, etc., conclusively refute the appellee's contentions of unusually hazardous surroundings.

The evidence will now be examined in the light of the general contentions that the defendant was entitled to an instructed verdict, or a judgment notwithstanding the verdict. Such testimony in the main will also be the proper subject matter for further consideration in determining later the merits of issues involving discovered peril.

The point of accident was at the intersection of highway 80 with the main line of the appellant's railroad track in Ranger, Texas. The word "crossing" will be used to denote the "point of accident." Highway 80 is a well known paved highway extending in a northeasterly and southwesterly direction. The main line of appellant's railroad crosses the highway at an angle of 126 degrees. Likewise, the railroad extends in a northeasterly and southwesterly direction and the angle referred to lies between the segment of the highway on which the Hesson car was approaching the crossing and that part of the main line of the railroad extending northeasterly or over which the train was approaching the crossing. From said crossing west on the highway, it is 132 feet to appellant's switch or house track which intersects the highway at an angle of 110 degrees or somewhat parallel to the main line. It is 153 feet from the main line "crossing" west to a railroad crossing sign which was on Hesson's right as he approached the "crossing." It is 180 feet west from the main line "crossing" or point of accident to the point where a police car was parked at the time and immediately prior to the accident. This car was parked on the south shoulder of the highway, was facing the "crossing" and its lights shone across the railroad track at the "crossing" and on the train when it came up on the crossing. This automobile (parked on the south shoulder of the highway and 180 feet west of the point of accident) was occupied by two policemen who at the time were on patrol duty and who upon discovering the light from the approaching train and hearing the sound of its whistle stopped their car at that point. They were looking in the direction of the "crossing" over which the train was about to pass. They were about 500 feet west of this "crossing" when they first saw and heard the approaching train and proceeded to stop at said point. Highway 80 is straight for 800 feet west of the "crossing" and a considerable distance on east of the same.

Approaching the "crossing" from the west on this straight portion of the highway, the line of vision to points on the railroad over which the train was approaching is in substance as follows: At 800 feet on highway west of the "crossing" the vision of appellant's main line of railroad north of the "crossing" is 115 feet; at 475 feet west on the highway from "crossing" the vision would extend 190 feet north on the railroad; at 325 feet west on the highway from "crossing" the vision would extend to 555 feet on the railroad, etc. Each line of vision would pass through a point near the south end of a bill board north of the highway. The main line of the railroad is straight for about 600 feet in the direction from which the train was coming and beyond that point there was a slight curve. The photographs accompanying the record disclose no obstructions on the railroad right-of-way nor the surrounding terrain that would in any way prevent a person (approaching the "crossing" on the straight portion of the highway to the west) from seeing the light emitted by the reflector of the approaching train. The respective directions of the highway and railway at the point of intersection caused the headlight on the engine to reflect rather in the direction of the Hesson car as it approached the "crossing."

The train carried the standard headlight. There were other smaller lights on or about the engine. They were the usual cab lights, the lights on the smoker and classification lights. It being at night the electric headlight fell at a greater distance along the track, especially where it was straight, and it shone upon the "crossing" as the Hesson car approached the same.

Appellee's testimony discloses that Harold Hesson, the driver, was skillful in handling the automobile, that it was in good running condition, the brakes and lights in good order, and that the driver was familiar with the crossing. His father testified that the young man could have seen the crossing if he looked, and that the son must have passed the state highway and railway signs (to his right) on his approach to the crossing. His father testified that the son had driven along that highway and over the crossing frequently and at both day and night, as he himself had done.

Harold Hesson was 22 years of age and the young lady accompanying him was 17. The accident occurred about 12:45 after midnight. The jury found (1) that the speed of the automobile approaching the crossing was "greater than 20 miles per hour"; (2) that in approaching the cross-

ing it was not going "at a greater rate of speed than 45 miles per hour"; (3) that "prior to and at the time of the accident" it was going "35 miles per hour"; (4) that Harold Hesson was "familiar with, or had knowledge of the existence of the railway crossing involved"; (5) that at time of accident Hesson "failed to keep a lookout for the approaching train"; and (6) "upon approaching the railroad crossing" he did not "look or listen for the approach of a train." The jury found none of Hesson's acts to be negligence.

In the statement of facts we find photographs of the Hesson car taken immediately after the accident and before its condition had been altered. To our minds it is clear from this picture and the other testimony supplementing and corroborating the same that the automobile approached and made almost a direct frontal collision with the engine or the pilot thereof. The officers testified that about 20 or 25 feet from the train the Hesson car (while approaching) swerved slightly to the right or south (direction of train) and then seemed to swerve to the left about the moment of contact. The automobile became locked in the machinery of the engine or cow-catcher and was carried from about 60 to 100 feet or to the point where the train stopped.

The train was made up of 10 or 11 cars, the caboose, engine and tender. The load was 550 to 600 tons, consisting mainly of cement and tanks of gasoline. The conductor testified that the Hesson car was about even with the police car when the pilot of the train was passing onto the highway or entering the crossing. That he saw the Hesson car pass the policemen's car and that he assumed that it would stop, as people generally do in approaching or rushing up to the side of a passing train. That Hesson's car was about 30 or 40 feet from the engine or the crossing when he realized that possibly it was not going to stop. That the bell was then ringing and the engineer blew the whistle and applied the brakes, causing the train to stop in 60 or 80 feet. That had the brakes been applied when the Hesson car was passing the police car, the train, loaded as it was, could not have been stopped before the highway was entirely blocked or in time to avoid the collision. And, as stated elsewhere, one of the nearby officers testified the pavement of the highway was one-half blocked when the Hesson car passed them, and the other that it was two-thirds blocked at that time. The evidence is that the Hesson car hit the engine or cow-catcher "a second or two" after the brakes on the train were applied.

As found by the jury, the train was traveling twelve miles per hour, but the jury also found that such rate of speed was not negligence on the part of the railroad. Also, the jury found that the defendant did not fail to keep a lookout along its track.

■ Aside from appellant's testimony and giving necessary effect to the undisputed facts and circumstances established by disinterested witnesses and physical facts, we are of the opinion that the only reasonable conclusion that can be drawn from the testimony as a whole is that the defendant was not guilty of any negligence proximately causing the injuries alleged.

The testimony now presented is properly appraised as follows in this court's opinion in the companion case, Wichita Falls & S. R. Co. v. Anderson, Tex.Civ.App., 144 S. W.2d 441, 444: "Furthermore, we are of the opinion that the general question of the defendant's rights in this case under the undisputed evidence is to be determined the same as if it were admitted, or conclusively established, that the train was running across the highway completely blocking it when the automobile ran into it. In other words, the decisions in cases like Wichita Valley R. Co. v. Fite, Tex.Civ.App., 78 S. W.2d 714, Cisco & N. E. R. Co. v. McCharen, Tex.Civ.App., 118 S.W.2d 844, by this court, and cases therein cited, are applicable. Apparently disinterested witnesses, including two police officers, in a position most advantageous to see what happened, testified that the automobile approached the crossing at a high rate of speed and to within 12 steps of the railroad and then too late attempted to avoid the collision by turning to the right onto the track, and that at the time the train was partly on the highway with its headlight shining upon the crossing. There was neither testimony nor physical facts contradictory of such evidence."

■ If there be any statement in the testimony tending to imply the contrary, such statement amounts to no more than a surmise or speculation to that effect, and under the scintilla rule amounts to no testimony whatever. Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059.

The authorities cited in the Anderson case are controlling here, but we cite in

addition: Texas & N. O. R. Co. v. Compton, 135 Tex. 7, 136 S.W.2d 1113; Texas & N. O. R. Co. v. Stratton, Tex.Civ.App., 74 S.W.2d 741, writ refused; Galveston, H. & S. A. R. Co. v. Price, Tex.Com.App., 240 S.W. 524; Kypfer v. Texas & P. R. Co., Tex.Civ.App., 88 S.W.2d 528; Texas Electric Service Co. v. Hawthorne, Tex.Civ. App., 135 S.W.2d 531; Missouri, K. & T. R. Co. v. Magee, 92 Tex. 616, 50 S.W. 1013; 41 Tex.Jur. p. 360, § 3; 45 C.J. p. 639, § 16.

Concerning the conduct of the driver on the occasion of the unfortunate accident and whose death is the basis of this suit, we said in the Anderson case: "The effect of the evidence was that the driver, in the absence of extraordinary signals, could, by the exercise of ordinary care in observing the usual signals that were given, have made the crossing safely. In the face of such evidence there is a total absence of any other evidence of probative force that the occupants of the automobile could not by the exercise of ordinary care by stopping and waiting have made the crossing safely without there being an automatic bell, wigwag or a watchman at the crossing."

We entertain the same view of the testimony in the instant case.

■ We are of the further opinion that there is no evidence that the defendant discovered and appreciated Harold Hesson's peril in time to avoid the injury by the exercise of ordinary care by the use of all the means at hand or in its control. The testimony reviewed gives a very clear picture of what transpired immediately before the accident. The undisputed evidence is that at the time of the accident, or immediately before it, the train had blocked the crossing to the extent of one-half or two-thirds of the pavement, and Harold Hesson was at such time about 180 feet west of the crossing. Those in charge of the train saw him at that point, saw him pass the police car, and naturally assumed that he would stop as people usually do under such circumstances. The bell was ringing and when it occurred to the trainmen that Hesson (about 100 feet from the crossing) probably would not stop, the brakes were applied and the whistle sounded. Hesson was then in such close proximity to the train and approaching at such rate of speed that the application of the brakes at that

time was too late to avert the collision since the train so loaded could not stop under 60 to 100 feet. If at the time of the collision the highway was not entirely blocked the bright light from the reflector was pouring across such unobstructed portion.

It is unnecessary to state the testimony in greater detail. Under the circumstances disclosed and the authorities generally, we are forced to the conclusion that there is no evidence to support the jury's findings upon the issues of discovered peril. Panhandle & S. F. Ry. Co. v. Napier, 135 Tex. 314, 143 S.W.2d 754; W. A. Morgan & Bros. v. Missouri, K. & T. R. Co., 108 Tex. 331, 193 S.W. 134; Daily v. Sugarland Industries, Tex.Civ.App., 124 S.W.2d 199; Sugarland Industries v. Daily, 135 Tex. 532, 143 S.W.2d 931; Texas Electric Service Co. v. Kinkead, Tex.Civ.App., 84 S.W. 2d 567; Dallas Ry. & T. Co. v. Glenn, Tex. Civ.App., 144 S.W.2d 961.

Evidently Hesson's failure to look for the approaching train at the crossing well known to him, his failure to observe the blocked condition of the crossing, although in approaching it he had the benefit of the lights from his own car, as well as those on the police car pointed in the same direction, and the rate of speed at which his car was driven, necessarily each and all proximately caused, or contributed to cause, his death.

■ The evidence in this case has been fully developed. Considering the history of the transaction involved and the disposition of the companion case, we are of the opinion that the judgment of the trial court should be reversed and here rendered in favor of the appellant. It is so ordered.

### On Rehearing.

After a careful consideration of the appellee's motion for rehearing, we have concluded that our judgment should be modified to a limited extent. We are now of the opinion that the cause should be remanded rather than rendered. To that extent the motion for rehearing is granted. The judgment of the trial court is reversed and the cause remanded for a new trial. The original judgment will be set aside and a new judgment entered as of this date. It is so ordered.