### GILLETTE MOTOR TRANSP. CO. v. WHITFIELD.

#### No. 14775.

Court of Civil Appeals of Texas. Fort Worth.

Sept. 20, 1946.

Supplemental Opinion Oct. 4, 1946.

Rehearing Denied Nov. 1, 1946.

Hill, Paddock & Langdon, Massingill & Belew and Homa S. Hill, all of Fort Worth, for appellant, Gillette Motor Transport Co.

Earl Conner, Sr., of Eastland, for appellee, Wichita Falls & Southern R. Co.

Jones & Jones, of Marshall, and Raymond Buck and John B. Honts, both of Fort Worth, for appellee, T. E. Whitfield.

McDONALD, Chief Justice.

Some seven years ago appellee was severely injured in a collision between a train and a truck in the City of Ranger, Texas. Whitfield's suit for damages has been tried three times on the merits, and has been appealed to this court four times, three times on the merits and once on a plea of privilege ruling. The first trial resulted in a judgment for Whitfield for $20,202, which was reversed on appeal. Gillette Motor Transport Co. v. Whitfield, Tex.Civ.App., 160 S.W.2d 290. The plea of privilege ruling and the result thereof on appeal are shown by the opinions in Gillette Motor Transport Co. v. Wichita Falls & Southern Railroad Co., Tex.Civ.App. 170 S.W.2d 629, and in Wichita Falls & Southern Railroad Co. v. McDonald, 141 Tex. 555, 174 S.W.2d 951. On the second trial Whitfield recovered judgment for $39,753. Reversal followed in Gillette Motor Transport Co. v. Whitfield, Tex.Civ.App., 186 S.W.2d 90, writ refused for want of merit. On the third trial Whitfield recovered judgment for $44,400, and the case is again before this court.

As shown by our former opinions, Whitfield first sued the Transport Company and the Railroad Company. His suit against the Railroad Company was transferred to Eastland County on the plea of privilege mentioned above. Then he amended, suing only the Transport Company. The Transport Company sought to recover the damages done to its truck and the cargo carried in it by a cross-action against Whitfield and the Railroad Company; and it further prayed that in the event Whitfield should recover judgment against the Transport Company the latter should have judgment over against the Railroad Company for such

amount, or for contribution to such extent as it might be entitled.

The manner in which the collision occurred is described in our former opinions, and will be set out briefly later in this opinion.

During the first trial of the case Whitfield entered into a settlement of his claim against the Railroad Company, the nature of which is set out in our opinion reported in 186 S.W.2d 90. Up to the time of the trial from which this appeal is taken the Railroad Company had paid Whitfield the sum of $5,600 under this settlement agreement. The damage issue submitted to the jury reads as follows: "In what amount, if any, over and above the total amounts already paid the plaintiff by the Wichita Falls & Southern Railroad Company, do you find from a preponderance of the evidence, the plaintiff has been damaged by reason of the injuries received in the collision in question?"

■ Appellant complains of the inclusion in the issue of the phrase "over and above the total amounts already paid the plaintiff by the Wichita Falls & Southern Railroad Company." It is contended that the charge was a comment on the weight of the evidence, and that it suggested to the jury that it begin its deliberations by assuming that plaintiff's damages amounted at least to $5,600. Appellant argues that the jury should simply have been asked to find the amount of damages suffered, and that the court as a matter of law should have deducted therefrom the amount Whitfield had received from the Railroad Company. We do not consider that the charge amounted to a comment on the weight of the evidence. An issue which might otherwise be objectionable as assuming controverted facts or as being on the weight of the evidence may, in a proper case, be rendered innocuous to these objections by the use of the words 'if any.'" 41 Tex.Jur., p. 1138. See also Finck Cigar Co. v. Campbell, Tex.Civ.App., 114 S.W.2d 348, affirmed by the Supreme Court, Id., 134 Tex. 250, 133 S.W.2d 759. Furthermore, we cannot believe that the inclusion of the phrase complained of influenced the amount of the verdict. Texas Rules of Civil Procedure, Rule 434. It is not reasonable to think that a jury which might otherwise have returned a verdict for less than $5,600 would have increased the verdict to $50,000 by reason of the phrase in question.

Appellant argues that the record reflects that the trial court recognized that error had been committed, and attempted to cure it by rendering judgment for $44,400, rather than for $50,000, the amount of damages found by the jury. The record reflects, on the contrary, that judgment was reduced to $44,400 because Whitfield's pleadings alleged damages in the sum of $50,000. The Transport Company was entitled to credit on the judgment against it for the amount which Whitfield had received from the Railroad Company, so, in order to bring the judgment within the limits of the pleadings, it was necessary to deduct the sum of $5,600 from the amount of the verdict. In fact, appellant filed a motion calling on the court to reduce the judgment to $44,400 for the reasons just mentioned.

■ Under its second point of error appellant complains of the following instruction which accompanied the damage issue: "In this connection, however, you are instructed that you can allow plaintiff only such damages as were shown by a preponderance of the evidence introduced before you to have been occasioned by the collision in question and which were directly and proximately caused by the negligence, if any, of the defendant, Gillette Motor Transport Company."

It is urged that the charge was a comment on the weight of the evidence and suggested to the jury that the Railroad Company had fully discharged its obligation to Whitfield and should not be held further liable on account of any damage sustained by Whitfield as a result of the collision. It is argued that the charge tended to influence the jury in its findings on the issues of negligence. Appellant says that the charge singled out the Transport Company, and in effect told the jury that the court was not concerned with any negligence or proximate cause on the part of the Railroad Company. The instruction, appellant argues, would tend to influence the jury not to give due consideration to the charges of

negligence brought against the Railroad Company by the Transport Company in connection with the plea against the former.

The charge as first prepared confined the jury to damages directly and proximately caused, to quote, "by the negligence, if any, of the defendant or defendants". Appellant objected to the charge, pointing out that Whitfield sought a recovery only against the Transport Company, and not against the Railroad Company, and that the charge would, to quote from appellant's objection, "permit the jury to have too much latitude and place too great a burden on this defendant Transport Company, in that the jury could allow such damages as sustained by the plaintiff as the jury might find to be proximately caused by the negligence of the Railroad Company, and this even though the jury might in answer to the specific issues of negligence on the part of the Railroad Company and its agents find that these specific acts of negligence inquired about did not constitute proximate cause." Apparently the charge was changed in an effort to meet these objections. Appellant then objected to the charge as it was finally given.

We find no error in the portion of the charge now under discussion. Whitfield's suit against the Railroad had been transferred on plea of privilege to Eastland County. At the time of the present trial Whitfield sought a recovery in the Tarrant County suit only against the Transport Company. The only damages involved, either in Whitfield's suit against the Transport Company or in the Transport Company's plea over against the Railroad Company, or in its plea for contribution between joint tort-feasors, were the damages proximately caused by the negligence of the Transport Company. If Whitfield had suffered any item of damage resulting only from the wrongful act of Railroad Company, it would have been erroneous, as pointed out in appellant's objection to the charge as first written, for the jury to take that item of damage into consideration in answering the damage issue. The charge properly confined the jury to consideration of the damages which were involved in this suit.

The charge contained the following instruction to the jury: "You will not take into consideration nor discuss any matters not produced in evidence before you, other than matters of common knowledge."

Appellant objected to the instruction on the ground that the instruction was confusing and allowed and suggested to the jury that it might discuss and consider matters outside the record.

Charges similar to the one above quoted were criticised in Phoenix Refining Co. v. Tips, 125 Tex. 69, 81 S.W.2d 60; St. Louis, B. & M. Ry. Co. v. Zamora, Tex.Civ.App., 110 S.W.2d 1242; and Petroleum Producers Co. v. Stolley, Tex.Civ.App., 137 S.W.2d 207. In the Tips case the jury were instructed that they might discuss and take into consideration matters of common and general knowledge. The judgment of the trial court was reversed by the Supreme Court on other grounds, but in remanding the case for another trial the court said [125 Tex. 69, 81 S.W.2d 62]:

"In view of the fact that this case must be retried, there is another matter that we deem it expedient to call attention to in order to guard against another reversal. * * *

"It will be noted that this charge directly and affirmatively told the jury that in addition to the evidence they might consider matters outside the evidence 'of common and general knowledge.' We think this portion of the charge was error. It was on the weight of the evidence, was argumentative, and calculated to mislead the jury because they were not presumed to know what in law constituted 'common and general knowledge.' "

No authority is cited by the court in support of its holding, and the weight of authority in other jurisdictions seems to be to the contrary. See the discussion and the cases cited in the annotation in 144 A.L.R., pp. 932-935. The editor of the cited A.L.R. annotation declares the rule to be as follows: "Accordingly, it is not improper for the court to instruct the jury that, in reaching a verdict upon the law and the evidence, they may use the general experience which they possess with the generality of mankind."

Appellee contends that the quoted part of the opinion in the Tips case is dicta, and not controlling on the present appeal. Whether it is dicta or not we do not feel justified in holding, in the face of the positive language used by the Supreme Court, that it was proper to instruct the jury in the present case that they might consider and discuss matters of common knowledge.

It does not necessarily follow, however, that the error is one which requires a reversal of the judgment. It is the general rule, as recognized in St. Louis, B. & M. Ry. Co. v. Zamora, Tex.Civ.App., 110 S.W.2d 1242, cited supra, that the jury may consider matters of common knowledge in weighing evidence in a case. As said by the Supreme Court in reference to consideration by the jury of questions of negligence: "The common knowledge and experience of jurors, their acquaintance with the affairs of life and the motives of men acting under different conditions, are specially called into request in determining such questions." International & G. N. R. Co. v. Eckford, 71 Tex. 274, 8 S.W. 679, 680.

In 53 Am.Jur., p. 656, it is said: "Jurors are not expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life, but may give effect to such inferences as common knowledge or their personal observation and experience may reasonably draw from the facts directly proved."

Judge Speer says, in his work entitled The Law of Special Issues in Texas, at page 7: "As an inherent and necessary part of the performance of the primary function of weighing the evidence, determining the credibility of witnesses and trustworthiness of evidence, the jury necessarily is clothed with the incidental power and right to call to their aid the exercise of every power of mind and every just reasoning even though the same may be predicated, as it often will be, upon the jurors' common observation and experience with respect to similar matters. This rule, however, has its limitations and cannot be permitted to supply what would otherwise require evidence. It extends only to those matters of common knowledge and experience known to the jurors as ordinary men."

It may be an unwise practice, as pointed out in the Tips case, to instruct the jury that they may discuss and take into consideration matters of common knowledge, because they may not know what in law constitutes common knowledge, but if they do take matters of common knowledge into consideration they commit no error. If we should presume that the jury gave literal obedience to the court's charge, or if the record had shown affirmatively that they did, we would have no reversible error in the case, because we would only have a case where the jury did what they were entitled to do under the law. There is nothing in the record before us to indicate that the jury were misled by the instruction, or that they went beyond it. We do not feel justified in reversing the judgment on a supposition that the jury might have misunderstood or disobeyed the court's instruction. The reasoning underlying the decision in Denbow v. Standard Acc. Ins. Co., 143 Tex. 455, 186 S.W.2d 236, is applicable here. In that case the trial court, in violation of Rule 295, gave the jury an oral instruction. The Supreme Court called attention to Rule 434, often referred to as the harmless error rule, saying that Rules 295 and 434 must be read together, and that, even though there was a violation of Rule 295, the case would not be reversed unless the violation of the rule was reasonably calculated to and probably did cause the rendition of an improper judgment or probably prevented the appellant from making a proper presentation of the case to the appellate court.

As stated in our opinion in 186 S.W.2d 90, the collision occurred under the following circumstances. The collision occurred in the city of Ranger, where the main line of the Railroad Company crosses U. S. Highway 80, at the same crossing involved in the cases of Wichita Falls & Southern R. Co. v. Anderson, Tex.Civ.App., 144 S.W. 2d 441, writ dismissed, correct judgment; and Wichita Falls & Southern R. Co. v. Hesson, Tex.Civ.App., 151 S.W.2d 270. The train was engaged in a switching operation at the time. The engine was pulling several freight cars, and was push-

ing two cars ahead of the engine. A tank car was immediately in front of the engine. The leading car on the train, in the manner in which it was being operated, was a box car. The train was proceeding in a southerly direction. Whitfield, in the performance of his duties as a brakeman, was riding at the southwest corner of this leading box car, with his feet resting on an iron step a short distance above the ground. The collision occurred after dark. Rain and mist were falling. As he approached and crossed the highway, Whitfield was waving an electric signal lantern. The truck approached from the west, traveling, according to the verdict of the jury, at 35 miles per hour. The train was traveling at five or six miles per hour. Whitfield first saw the truck when it was some 300 yards from the crossing, and observed the speed at which it was traveling. He testified that he did not expect the truck to cross ahead of the train, but expected the truck to stop in response to his flagging signal, and did not realize that the truck would not stop until the leading box car was already well across the highway. He then gave an emergency signal to stop the train, but at almost the same moment the truck crashed into the side of the leading box car, derailing it, and killing the truck driver. Whitfield was knocked off the train, and was seriously injured.

The Transport Company alleged that at no time did Whitfield give the engineer any signal to slow down, and, in the alternative, that if such a signal was given it was not given in such time that the train could have been slowed down or stopped by the engineer after the signal was given and before the collision occurred. It was also alleged that Whitfield was in position to have caused the train to slow down or stop after seeing the truck approaching and could have averted the collision by a signal to the engineer to slow down or stop. The manner in which Whitfield's conduct in this respect was submitted to the jury on the second trial of the case was discussed in our opinion in 186 S.W.2d 90, at page 97.

As said in our former opinion, there was sufficient evidence to raise a jury question whether Whitfield was negligent

or not in failing to signal the engineer to stop or slow down when Whitfield saw the truck approaching at high speed. On the present trial appellant requested the court to submit the defense in question by inquiring whether Whitfield failed to give the engineer a stop signal in time for the engineer to stop the train and avoid the collision, and whether Whitfield failed to give the engineer a slow-down signal in time for the engineer to slow down the train and avoid the collision. Appropriate negligence and proximate cause issues were also requested. The court submitted the defense by first inquiring, in Special Issue No. 35, whether a person of ordinary care situated like Whitfield would have realized that the truck was probably not going to stop in time to signal the engineer to slow down the train before the collision. The jury were instructed that if they should answer in the affirmative, they should then say whether Whitfield's failure to give the engineer a slow-down signal in time to slow down the train before the collision was negligence, and whether such negligence was a proximate cause of the collision. The court employed the same manner of submitting the question of Whitfield's negligence in failing to give the engineer a signal to stop the train.

It seems to be undisputed that Whitfield did not give the engineer a signal to slow down or stop in time to avoid the collision. Appellant complains because submission of the question of negligence on Whitfield's part in this respect was made conditional on the issue, which appellant says is an evidentiary and not an ultimate issue, inquiring whether a person of ordinary care situated as Whitfield was would have realized that the truck was not going to stop, in time to give the engineer a signal to slow down or stop. Whitfield testified, and there is nothing in the record to dispute his testimony, that he did not realize until it was too late that the truck was not going to stop. The ultimate inquiry, therefore, is whether Whitfield was negligent in failing to realize in time that the truck was not going to stop. Under the precise facts of this case, the first question is not whether Whitfield was negligent in his conduct after he realized that the truck was not go-

ing to stop, because it is undisputed that this realization came to him after it was too late to avoid the collision by signaling the engineer. He did give the signal, but it was too late to stop the train. The first question which must be answered is thus whether Whitfield was negligent in not sooner realizing that the truck was not going to stop. We consider that the issues submitted by the court more accurately submitted to the jury the questions of negligence raised by the pleadings and the evidence than did those requested by appellant.

Appellant pleaded that failure of the Railroad Company to have a light at the crossing where the collision occurred was negligence and a proximate cause of the collision, and in the alternative that failure to have a light at the crossing was the sole proximate cause of the collision. In Special Issue No. 13 the court inquired whether failure to have the light was a proximate cause of the collision, and, conditioned upon an affirmative answer to the 13th issue, inquired in Issue No. 14 whether failure to have the light was the sole proximate cause of the collision. The jury answered the 13th issue in the negative, hence did not answer the 14th issue.

Appellant contends that the sole proximate cause issue should have been submitted unconditionally, and that it was error to require the jury to answer it only in the event they answered the proximate cause issue in the affirmative.

■ "Each party, whether plaintiff or defendant, is entitled to the affirmative and unconditional submission of the issues presented by his pleadings as grounds of recovery or grounds of defense, provided, of course, there is evidence raising the issues." Texas Employers' Ins. Ass'n v. Patterson, Tex.Sup., 192 S.W.2d 255, 257, citing Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S.W. 517, and other cases.

"The conditions as they existed at the time the charge was given and not after the verdict control. A defendant is entitled to an affirmative submission of his defensive issues and a finding on issues submitted is not a finding on issues not submitted." Schuhmacher Co. v. Holcomb, 142 Tex. 332, 177 S.W.2d 951, 953.

"And it is no answer to say that a finding on respondents' issues submitted to the jury amounted to a finding on petitioners' issues which were not submitted, as there is no certain way to tell what the answers to the unsubmitted issues would have been." State v. Schlick, 142 Tex. 410, 179 S.W.2d 246, 248.

■ It is evident from the opinions just cited and many more to the same effect which could be cited that our courts are strict in requiring that the issues made by the pleadings and the evidence be submitted directly and unconditionally, in order that each party may have a direct submission to the jury of his grounds of recovery or of defense, and that it is not enough that an issue may be answered indirectly or by implication in some other issue submitted by the court. The court must submit the controlling issues made by the pleadings and the evidence, but where the controlling issues have been fairly submitted, the judgment is not to be reversed for failure to submit other and various phases or different shades of the same issue. Rule 279. In the instance under discussion, appellant pleaded that certain conduct of the Railroad Company was a proximate cause of the collision, and in the alternative pleaded that the same conduct was the sole proximate cause of the collision. Under the narrow circumstances presented, we do not believe that the manner of submission employed by the court offended the rules announced in the cases above cited, nor do we think that it could reasonably be said that the manner of submission was harmful to appellant. Rule 434. Appellant pleaded, in the alternative, two results flowing from the same act of the Railroad Company. Viewed either prospectively or retrospectively, the second of the pleaded alternatives could be true only if the first was true. The failure to have the light at the crossing could be the sole proximate cause of the collision only if it was a proximate cause of it. The pleaded alternatives were brought directly to the attention of the jury, and we do not see how the jury could

have been misled, or how they could have failed to give due consideration to the question of causation, both proximate and sole. We do not have in this case the underlying reasons which impel the holdings announced in the cited cases and those like them.

The Transport Company alleged that the Railroad Company failed to station a flagman or watchman at the crossing, and in a separate paragraph alleged that the Railroad Company failed to provide an automatic warning signal at the intersection, (quoting) "either a bell, a wig-wag or lights of any kind or character." There were corresponding allegations of negligence, proximate cause, and sole proximate cause.

 The court submitted an issue inquiring whether the failure of the Railroad Company to maintain either a flagman or an automatic warning signal or bell or gates was negligence. The sole proximate cause defense was submitted in the same fashion. Appellant requested submission of an issue inquiring in effect, whether the failure of the railroad to place a flagman at the crossing was negligence, and requested another issue inquiring whether the failure to provide an automatic warning signal was negligence. Appellant requested submission of the sole proximate cause defense in the same fashion. The question presented, therefore, is whether the court committed error in combining in the same issue the failure to place a flagman at the crossing and the failure to provide an automatic warning. Appellee argues that the Transport Company's pleadings in reality allege a single defense in this respect, to wit, the failure to provide a warning at the crossing, either human or mechanical. When we examine the entire pleadings and consider all the facts of the case, we agree with appellee. We can find no basis in the evidence which will support a theory that the Railroad Company should have had both a flagman and an automatic signal, or that having only one or the other could have been the sole proximate cause of the collision. We believe that the manner of submission employed by the court more nearly conformed to the pleadings and the proof than would have the type of submission requested by appellant.

 The Transport Company alleged that Whitfield failed to keep a proper lookout for the truck, and in another paragraph alleged that the engineer, the conductor and the rear brakeman failed to keep a proper lookout. Appellant requested the submission of three sets of issues in this connection. The first set of issues inquired whether Whitfield failed to keep a proper lookout, and whether such failure was negligence and proximate cause. The second set inquired as to the engineer, and the third as to the conductor. The trial court submitted, instead, four issues. Omitting formal parts, the four issues submitted by the court read as follows:

(61) "Do you find from a preponderance of the evidence that the conductor, or the engineer, or Whitfield, or Bart, or all of them, failed to keep a proper lookout on the occasion in question?"

(62) "If you have answered special issue No. 61 'yes', then answer this question.

"From a preponderance of the evidence which one or ones of such employes, if any, do you find failed to keep a proper lookout?

"Answer by naming the employee or employees:

"Answer: ————
————
————,"

(63) "Do you find from a preponderance of the evidence that such failure, if any, to keep a proper lookout was negligence?"

(64) "Do you find from a preponderance of the evidence that such negligence, if any, was a proximate cause of the collision?"

Appellant contends that the manner of submission employed by the court violated the rule prohibiting multifarious or duplicitous issues, and also the rule requiring separate submission of separate defenses. It argues that the claimed violation of such rules is especially important here on account of the fact that the legal conse-

quences of a failure on the part of Whitfield, the plaintiff, to keep a proper lookout would be different from the failure of the other railroad employes to keep a proper lookout. In connection with the contention last mentioned, we doubt seriously if the evidence raises an issue as to any failure on Whitfield's part to keep a proper lookout. The evidence seems to be undisputed, as we interpret the record, that Whitfield saw the truck approaching while it was still some distance away, but thought until just before the collision that the truck would stop. We simply find no evidence tending to show that Whitfield failed to keep a proper lookout. Even though his testimony be disbelieved, as a party to the suit, there is no other testimony that we have found tending to show a failure on his part to keep a lookout. But be that as it may, it seems to us that the trial court found a sensible way of reducing the number of issues to be submitted to the jury. We might not say this if it were not for issue No. 62, which required the jury to name the individuals who failed to keep a lookout. For every practical purpose, the jury were thus called on to consider the conduct of each of the four named individuals, and then to name separately such of them as failed to keep a lookout. Unless we allow form to control over substance, we can find no infraction of the rule against submission of multifarious issues, or the rule requiring separate submission of separate defenses.

Appellant complains of the manner of submitting the issue of extra-hazardous crossing. Without discussing the contention in detail, we hold that the issue was in substantial conformity with appellant's pleadings, and was authorized by the holding in Missouri K. & T. Ry. Co. of Texas v. Long, Tex.Com.App., 299 S.W. 854.

■■■ In his second and third amended petitions Whitfield alleged that the Railroad Company was negligent in certain respects. The Transport Company offered the pleadings in evidence. Appellant charges here that the trial court erred in limiting the evidence and in admitting it only for the purpose of impeaching Whitfield. The record is somewhat confusing, and there may be some doubt as to what the actual ruling of the court was. But in any event it seems to us that the record shows that the Transport Company was insisting that the abandoned pleadings be admitted for all purposes. This clearly would not have been proper, and as against the objections made, we find no reversible error.

Practically the same contention which appellant makes under its 10th point of error was made by appellant on the former appeal, reported in 186 S.W.2d 90. For the same reasons there stated we overrule the contention without further discussion.

We likewise overrule the contentions made under the 11th point of error for the reasons set out in our former opinion.

■■■ Appellant alleged that the light from the headlight on the engine was not shining directly ahead and in the path of the train, and did not light up the tracks on the highway ahead of the train and at the point of the collision, and that a dark spot ahead of the train was negligently made. The court submitted an issue inquiring whether the operation of the train without the headlight shining directly on the track was negligence. Appellant contends that the court should have submitted appellant's requested issue, inquiring whether the Railroad Company failed to operate its train with a light forward in the direction that the train was moving at the time, place and occasion of the collision. Also requested were the issues of negligence and proximate cause. We think that the issue submitted by the court was as nearly in accord with appellant's pleadings as was the issue requested by appellant. The difference between the two issues is not substantial.

We do not believe that the contention made under the 13th point is serious enough to require discussion.

Appellant presents certain contentions under points of error 16 to 21, inclusive, which were overruled for the reasons set out in our opinion reported in 186 S.W.2d 90. For the same reasons we again overrule the contentions made under these points.

We overrule all points of error, except those relating to excessiveness of the verdict.

Appellant charges that the verdict is excessive. Rule 440 provides for a suggestion of remittitur by the appellate court where it is of the opinion that the verdict is excessive and that judgment should be reversed for that reason only.

We have carefully compared the facts of this case with those of many cited cases, including those cited in 13 Texas Jurisprudence, Damages, Sections 156 to 168, those cited in 14 Texas Digest, under the title of Damages, ☞ 128 to 134, and those cited in two lengthy annotations in 46 A.L.R., pp. 1230 to 1443, and in 102 A.L.R., pp. 1125 to 1579. We have also considered the discussions and the cases cited in 15 Am.Jur., Damages, beginning at Section 203, and in 25 C.J.S., Damages, beginning at § 196.

"In actions sounding in damages merely, where the law furnishes no legal rule for measuring them, the amount to be awarded rests largely in the discretion of the jury, and with their verdict the courts are reluctant to interfere. As shown elsewhere, a verdict may be set aside as excessive by the trial court or on appeal when, and not unless, it is so clearly excessive as to indicate that it was the result of passion, prejudice, or corruption, or it is clear that the jury disregarded the evidence or the rules of law." 15 Am.Jur., p. 621.

In the same text, at page 623, it is said: "However, the amount awarded must bear some reasonable proportion to the injury sustained. * * * Where the amount is so large as to exceed any compensation a jury could reasonably have allowed under the circumstances of the case, the verdict is excessive."

At page 624 it is said: "The courts have repeatedly recognized, both in express statements and by constant references in their opinions to amounts which courts and other cases under similar conditions have allowed or held to be excessive, the value of precedents with reference to the proper amount of damages to be awarded for particular injuries. They will accordingly consider the amount awarded in other similar cases in determining whether a particular verdict is excessive."

It is also said, at page 626, that the amount of the verdicts rendered on former trials of the same action may be considered in determining whether the verdict is excessive.

Beginning at page 629 will be found a discussion relating to specific verdicts in large amounts which have been upheld as not excessive, and other specific verdicts which have been regarded as excessive.

From the cited cases and discussions of text-writers, it is observed that very few verdicts in excess of $30,000 have been upheld, and those only in cases where the injuries were most severe. Only two or three Texas cases have been found in which verdicts of more than $30,000 have been sustained, and in those cases the injuries were unusually serious. It would not be especially helpful here to cite specific cases, nor is it especially helpful to quote from opinions in which the verdicts were much less than the one now under consideration. Treating the evidence in the light most favorable to appellee, and giving due consideration to the amounts of the two previous verdicts, we feel obliged to hold that the verdict is excessive.

It is difficult, as many courts have said, to say in what amount the verdict is excessive. After comparing the case before us with literally scores of other cases which we have considered, we believe that we should suggest a remittitur of $12,500.

If appellee will file a remittitur of $12,500 on or before the third day of October, 1946, the judgment of the trial court will be reformed accordingly, and as reformed will be affirmed; otherwise the judgment of the trial court will be reversed and the cause will be remanded. Leave is hereby granted to all parties to file motions for rehearing within 15 days after the date when we enter final judgment as above indicated.

### Supplemental Opinion

On September 20, 1946, we indicated by an opinion in writing that if appellee would file a remittitur of $12,500 on or before October 3d 1946, the judgment of the trial court would be reformed, and as reformed

would be affirmed, and that otherwise the judgment of the trial court would be reversed and the cause remanded. Appellee has filed the suggested remittitur of $12,500.

Accordingly, as of this date, the judgment of the trial court is reformed by deducting the amount of $12,500 from the judgment recovered by appellee, and as so reformed, is affirmed.

One-third of the costs of the present appeal will be taxed against appellee Whitfield, two-thirds against appellant Gillette Motor Transport Company.

Motion for rehearing may be filed by any party within 15 days after this date.