## ENGLISH FREIGHT CO. v. PRESTON.
### No. 11886.

Court of Civil Appeals of Texas. Galveston.
June 19, 1947.

Rehearing Denied July 10, 1947.

**658**

Strasburger, Price, Holland, Kelton & Miller and Henry W. Strasburger, all of Dallas, and Fulbright, Crooker, Freeman & Bates, M. S. McCorquodale, and Sam W. Cruse, all of Houston, for appellant.

Fred Parks and John E. Cahoon, both of Houston, for appellee.

GRAVES, Justice.

Appellee, Robert W. Preston, brought suit against English Freight Company for personal injuries received by him on or about July 12, 1945. The accident happened on Harrisburg Boulevard in Houston, Harris County, Texas. Appellee Preston was driving a taxicab, which collided with a truck owned by appellant, English Freight Company, and being operated by John Turner, a negro. The vehicles approached each other from opposite directions, and the accident occurred during daylight, with the weather clear.

Appellee Preston recovered judgment, based on a jury verdict, for $14,500. English Freight Company appealed therefrom.

Appellant's first two points of error challenge the trial court's action in having refused its motions—the first for an instructed verdict interposed at the close of the evidence, and the second for a judgment non obstante veredicto, submitted after the return of the verdict—both motions having been based upon a single ground, to the effect that the evidence as a whole had conclusively shown that the appellant's truck-driver, John Turner, at the time of the accident, was not acting in the scope of his employment for his master, but had deviated therefrom in pursuit of a mission personal to himself alone.

The background for these contentions was, to quote it, for convenience, from appellant's brief, substantially this:

"Request was made on appellant's attorneys, long before the trial, to admit that Turner was acting in the scope of his employment at the time of the accident in question. Appellant's attorneys, acting in good faith, and in an effort to facilitate the trial of this cause, admitted that fact, prior to trial, through mistake of fact. It was a complete surprise to appellant's attorneys that, on the trial of this cause, Turner, in effect, testified that he had turned off of the most direct route of his master's business, hence was out of the scope of his employment, and going by Weingarten's Store, on Harrisburg Boulevard, after sugar for himself at the time of the accident. It is shown by the statement introduced in the Bill of Exceptions that Turner had not informed appellant of his intentions prior to the testimony at the time of trial. The trial court, who had the witness and the attorneys before it, felt that the previous admission of fact had been made by the attorney for appellant while laboring under a mistake of fact. Therefore, the trial judge permitted appellant to withdraw its previous admission that Turner was acting in the scope of his employment."

Such admission had been so filed, pursuant to 169, Texas Rules of Civil Procedure.

■ This court is unable to hold with appellant that the mere testimony of its negro driver to the seeming purport that he had deviated somewhat from a route he otherwise probably would have taken from the Hughes Tool Company plant to that of the Duncan Coffee Company, from the first of which concerns to the other he was going at the time in pursuit of appellant's business, and proceeded down Harrisburg Boulevard, instead of probably along Clinton Driver—all these being streets within the City of Houston—for the purpose of getting to Weingarten's Store, on the latter street, in order to purchase some sugar for himself, required the trial court to either instruct a verdict in favor of appellant, in the first instance, or disregard the jury's verdict for the appellee and enter judgment in favor of appellant, in the second.

This for the primary reason that such testimony from the truck-driver redounding to the interest of his employer, whose witness he was, was not required to be accepted as unequivocally true by the jury, although there was no direct evidence to the contrary; in the second place, intrinsically, it did not, as a matter of law, show that he had thereby wholly departed from the course of his employment for the appellant for any appreciable length of time, or ceased to be

in the furtherance still of its business, by such an incidental change of perhaps equally available routes between the two firms his work had to do with, as above indicated.

Indeed, he further testified that, after the accident, he went right on to the Coffee Company's plant anyway.

 But, while appellee confines his answer to these assignments wholly to his contention that the trial court was without authority to withdraw appellant's so previously filed admission of the fact that the driver had been acting in the scope of his employment for the appellant at the time, under what he insists are the immutable terms of cited Rule 169, that answering contention of the appellee, together with his various supporting authorities—most of them from the Federal jurisdiction, from which Rule 169 was taken—seem to this court tangential to the question here; that is, the trial court in this instance did not pass upon nor in anywise construe the intrinsic requirements or provisions of that rule, which in our system is contained in the sections thereof relating to pre-trial procedure, but it simply held that, on what it found to be undisputed facts extraneous thereto wholly, that the application in toto of that rule had become improper, through an outside fortuity, to put the matter another way, that such statutory requirement had been complied with by the appellant's attorneys in good faith, under an actual mistake of fact, which alone induced it.

Surely, it is thought, the pains and penalties of the visitation of that drastic procedure—on the coming in of such indubitable proof that it could only cause a miscarriage of justice—were removable by the trial court; indeed, it is thought the true rule is thus stated in 31 Corpus Juris Secundum, Evidence, § 299, page 1068:

"Discretion of the court as to receipt or withdrawal. Judicial admissions relate to procedure, and accordingly it is largely within the administrative control and discretion of the court to determine all matters relating to their receipt, withdrawal, explanation, or modification, and enforcement. The court may, in its discretion, permit a judicial admission to be withdrawn as having been made by mistake or improvidently, but, as has been said, such discretion should be exercised cautiously, as a withdrawal is not favored." See also these Texas authorities: Masten v. Gower, Tex.Civ.App., 165 S.W.2d 901; Gordon v. Williams, Tex.Civ. App., 164 S.W.2d 867.

As this court reads them, none of the authorities cited and relied upon by the appellee hold contrarily to the action of the trial court here, in so permitting the appellant to withdraw its previous admission; but they all have to do with the intrinsic objectives, meaning, importance, or authority, of that procedure, where it is properly applicable.

Wherefore, appellant's first two points are overruled.

 Its Third Point, however, which challenges the correctness of the trial court's special issue No. 23, wherein it undertook to submit to the jury the question of whether the driver, Turner, was in fact acting within the scope of his employment with the appellant at the time, is well taken, and should be sustained. In form, that inquiry was this:

"Do you find from a preponderance of the evidence that John Turner was not acting within the scope of his employment by English Freight Company at the time of the accident in question?

"Answer 'We do so find' or 'No.'

"By the term 'acting within the scope of his employment', as used in this charge, is meant that he was engaged upon a mission for his employer at the time in question, and was not engaged in performing a special mission for himself."

In other words, that issue clearly placed the burden of proof upon appellant to show that the driver had not been acting within the scope of his employment for it at the time of the accident; whereas, the appellee himself, in both pleading and testimony, had undertaken to show, as a fundamental part of his case, that Turner had been acting at the time within the scope of his employment for appellant, hence the burden of proof was not only primarily upon him as to that issue, but never thereafter varied nor shifted from him; these

authorities are cited as fully supporting the holding that the court erred in so plainly laying such burden upon the appellant, instead of upon the appellee, where it properly belonged: Gordon v. Texas & Pacific, etc., Co., Tex.Civ.App., 190 S.W. 748; Merryman v. Zeleny, Tex.Civ.App., 143 S.W.2d 410; Hudson v. Ernest Allen Motor Co., Tex.Civ.App., 115 S.W.2d 1167; Ford Motor Co. v. Whitt, Tex.Civ.App., 81 S.W.2d 1032.

The record also shows that appellant not only properly and duly objected and excepted to such special issue No. 23, but went further and requested, instead thereof, this form of issue on that inquiry, which the trial court refused, but which this court approves as having been correct, to-wit:

"Do you find from a preponderance of the evidence that John Turner was acting within the scope of his employment by English Freight Company at the time of accident in question?

"Answer 'Yes' or 'No.'

"By the term 'acting within the scope of his employment,' as used in this charge, is meant that he was engaged upon a mission for his employer at the time in question, and was acting in furtherance of the business of his employer, and was not engaged in performing a personal mission for himself."

■ The Fifth Point is:

"The court erred in overruling appellant's motion for a judgment non obstante veredicto, upon the ground that appellee was guilty of negligence as a matter of law, proximately causing his injury in question, in having his arm protruding outside the window of his taxicab at the time of the collision in question."

This presentment is overruled, without further discussion, because, as this court understands it, it is a peremptory assumption that it was undisputed, or at least conclusively shown, both that the appellee had his arm protruding outside his taxicab window at the time, and that such condition was the proximate cause of his injury; whereas, as already indicated, while Section 2277 of the City of Houston's ordinances denounced as unlawful a person's riding with any part of his body protruding beyond the limits of the vehicle in which he was riding, a close examination of the evidence fails to show that either of appellant's indicated assumptions as to what was shown upon this feature can be sustained; all the evidence including the photographic demonstrations and the oral testimony of the witnesses, in ultimate results, simply presents a dispute upon that controversy. Indeed, there is much direct testimony, including that from two young girls who were riding in his taxicab with the appellee at the time, to the effect that he then had both hands on the steering wheel; that his left elbow was resting on the door of the cab about even with the outside edge thereof, or maybe just beyond that point, but that no portion of his arm was beyond the limits of the car; that he was seated straight behind the wheel, with both hands on it, and his arm resting on the window; nor did the photographs, upon which appellant very strongly relies for support of its position upon this phase, in anywise belie or overcome that direct testimony.

Wherefore, the finding of the jury in response to special issue 16, that the appellee acted, in placing his arm in the position it was in at and immediately before the collision, with such care as an ordinarily prudent person would have exercised under the same or similar circumstances, is sufficiently supported by the testimony.

■ The Sixth and last point assails the court's action in refusing submission of appellant's special issues 2 and 3, inquiring whether the appellee immediately before the collision failed to keep a proper lookout for appellant's truck, and whether such failure, if any, was a proximate cause of his injury.

The appellee thus, in this court's opinion, successfully answers that claim:

"The evidence did not raise the issue of appellee's failure to keep a proper lookout; therefore, the trial court did not err in refusing to submit it.

"Appellee Robert Preston testified: that he was proceeding east on Harrisburg

Blvd., on his right-hand side of the street, about 1½ feet to the right of the white line in the center. That he was travelling in a straight line, that there was a continuous flow of traffic on that street, that he observed the appellant's truck coming, traveling west, when it was approximately 100 feet in front of him; that when he observed it, it was in its line of traffic, a foot or more north of the white line; traveling in a straight line, at a speed of 30 to 35 miles per hour; that it was following within 10 or 15 feet of the car ahead of it. That when the truck was about 20 feet from him, it cut out of its line of traffic and across the white center stripe onto appellee's right side of the street. That when the truck cut out, appellee tried to cut to his right; that the collision occurred in the snap of a finger. That appellee was driving his taxicab about 20 or 25 miles per hour. That the driver of the truck gave no signal of his intention to turn out. At the time of the accident, appellee was looking at the truck, and he 'never dreamed there was going to be an accident, that he thought it was going to pass in safety until it ducked out.'

"The appellant's driver, John Turner, testified that traffic was pretty heavy through there and parked cars on each side of the road, and 'I didn't have the least idea he was going to hit. It surprised me, because I wasn't looking for nothing to hit.'

"Miss Joan Brown, passenger in the cab, testified that the appellee was not looking either to the right or left, but was looking straight ahead; thus corroborating Preston's statement that he was watching the truck.

"Authorities. Fox et al v. Dallas Hotel Co., 111 Tex. 461, 240 S.W. 517; Gillette Motor Transport Co. v. Whitfield, Tex.Civ. App. 197 S.W.2d 157; Id., Tex.Sup., 200 S. W.2d 624; International Great Northern R. Co. v. Hawthorne, 131 Tex. 622, 116 S. W.2d 1056; Speer, Law of Special Issues, page 11, par. 163, and cited cases."

These conclusions require a reversal and a remanding of the cause for another trial; it will be so ordered.

Reversed and remanded.